UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

CHRISTOPHER CRUZ,                                    **DOCKET NO.: CV-22-993**

                            Plaintiff,

            -against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE
DEPARTMENT, Commissioner Geraldine Hart,  in her individual
and official capacity;  Det. Gregory Marino, in his individual
and official capacity, PO Michael Cafarella,  in his
individual and official capacity, PO Matthew Cameron ,          **COMPLAINT**
in his individual and official capacity,  PO Jared Gresh ,
in his individual and official capacity, PO Frank Filiberto ,
in his individual and official capacity, PO Juan Borbon,
in his individual and official capacity,  PO Shaun Sullivan ,
in his individual and official capacity, PO William Bubeck ,
in his individual and official capacity,  PO Anthony Legotti ,
in his individual and official capacity,  PO Stephen Russ ,
in his individual and official capacity, PO Salvatore Sillitti,
in his individual and official capacity,  PO Vincent Bruno ,
in his individual and official capacity,  Sgt. Anthony DeMeo ,
in his individual and official capacity, PO Joseph Sinacori ,
in his individual and official capacity,  PO Daniel Boylan ,
in his individual and official capacity, Det. Michael Rottler ,
in his individual and official capacity,  PO Christopher Draskin ,
in his individual and official capacity,  PO Matthew Merced ,
in his individual and official capacity,  and Police Officers
"John and Jane Does 1-10," in their individual and
official capacities,

                            Defendants.              ***JURY TRIAL DEMANDED***

-------------------------------------------------------------X

        Plaintiff, CHRISTOPHER CRUZ, by and through his attorneys, THE LAW OFFICES

OF FREDERICK K. BREWINGTON, as and for his Complaint against the Defendants herein,

states and alleges as follows:

## PRELIMINARY STATEMENT

        1.      This is a civil action seeking monetary relief, a declaratory judgment,

compensatory and punitive damages, disbursements, costs and fees for violations of the Plaintiff's rights, false arrest, wrongful imprisonment, abuse of process, assault, battery, unreasonable use of force, excessive force, failure to intervene, denial of access to courts, fabrication of evidence, intentional infliction of emotional distress, negligence and gross negligence, brought pursuant to 42 U.S.C. §§1981, 1983, the 4th, 5th, 6th and 14th Amendments to the United States Constitution and New York State Law and depriving Plaintiff of rights secured by the Constitution and laws of the United States.

2.    Plaintiff alleges that Defendant POLICE OFFICERS assaulted, battered, falsely accused, falsely arrested, falsely imprisoned, and maliciously prosecuted CHRISTOPHER CRUZ all in violation of his constitutional and civil rights.

3.    Plaintiff alleges that Defendants SUFFOLK COUNTY, COMMISSIONER HART, and SUFFOLK COUNTY POLICE DEPARTMENT were negligent in training, hiring and supervising Defendant officers, thus leading to the unjustified excessive force, assault, false arrest, false imprisonment, malicious prosecution and other violations of CHRISTOPHER CRUZ Plaintiff alleges that the arrest was made in an attempt to justify the flagrantly improper and unjustified conduct of Defendant POLICE OFFICERS.

4.    Defendant POLICE OFFICERS without probable cause, justification or any reason except an intent to deprive Plaintiff of his rights, and their knowledge that their conduct has the tacit authorization of SUFFOLK COUNTY, COMMISSIONER HART, and SUFFOLK COUNTY POLICE DEPARTMENT, excessively beat, falsely charged, and falsely imprisoned Plaintiff in an effort to cover up their wrongdoing. Said use of unjustified force upon Plaintiff deprived him of his civil and constitutional rights.

2

5.      Plaintiff alleges that SUFFOLK COUNTY,  COMMISSIONER HART,, and SUFFOLK COUNTY POLICE DEPARTMENT are liable for the assault, battery, excessive force, false arrest, and false imprisonment, because the SUFFOLK COUNTY, and the SUFFOLK COUNTY POLICE DEPARTMENT has abused, condoned, and permitted a pattern of abuse of process of arrested persons, and has failed to properly investigate such incidents and has failed to discipline the officers involved. As a result police officers including these Defendants (collectively and individually) were deliberately indifferent to the need to train Officers of SUFFOLK COUNTY and the SUFFOLK COUNTY POLICE DEPARTMENT. Police Officers, including these DEFENDANTS, are encouraged to believe that they could violate the rights of persons, such as the Plaintiff, with impunity, and that the SUFFOLK COUNTY,  COMMISSIONER HART, and the SUFFOLK COUNTY POLICE DEPARTMENT has, and will, continue to act in violation of an individual's rights, thereby constituting through DEFENDANTS' actions and failures, a policy and/or pattern.

6.      As a result of the Defendants' actions (or lack thereof), Plaintiff suffered physical pain and suffering, and was caused to undergo medical treatment for serious physical injuries that he sustained at the hands of Defendants as a result of their use of excessive force and failure to provide medical attention to Plaintiff.  Plaintiff incurred significant cost and expenses due to the Defendants' actions, including but not limited to: substantial legal fees, medical bills, loss of potential employment, serious physical injuries, and other costs andexpenses.

## JURISDICTION AND VENUE

7.      This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1988 and the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution Jurisdiction is founded upon 28 U.S.C. Sections 1331 and 1341 (3) & (4) and the aforementioned

statutory and constitutional provisions.  Plaintiff further invokes the pendent jurisdiction of this Court to hear and decide claims arising under state law.

8.    Venue herein is proper under 28 U.S.C. § 1391(b); the cause of action arose in the Eastern District of New York, and upon information and belief, all of the parties reside in or are located in either Suffolk or Nassau County.

9.    That prior hereto Plaintiff in conjunction with his State claims filed a Notice of Claim in compliance with General Municipal Law Section 50 et. seq.

10.    On March 30, 2021 Counsel for Plaintiff received a document from the Suffolk County Attorney entitled "Demand for Examination" and setting May 6, 2021 as a date to conduct an examination of Mr. Cruz pursuant to Section 50-H of the General Municipal Law.

11.    On March 31, 2021 the office of the Suffolk County Attorney was notified that Mr. Cruz could not be examined on May 6, 2021 as he had pending criminal charges from this very matter, and a request that the attorney handling this matter contact Plaintiff's counsel and provided a telephone number.  No new date was ever set by the parties.

12.    On February 23, 2022 counsel for Plaintiff entered into an agreement with the office of the Suffolk County attorney to make Mr. Cruz available to be examined under General Municipal Law Section 50-H anytime before May 20, 2022 , should they chose to exercise that option.  In return for this agreement it was agreed that Defendants in this matter will not allege or raise the defense that Plaintiff has not complied with the General Municipal Law Section 50 et. seq.

13.    That more than 30 days have elapsed and Defendants have failed and refused to pay or adjust same.

## PARTIES

14.    Plaintiff CHRISTOPHER CRUZ is and was at all times relevant herein a citizen of the United States.   Plaintiff is an Hispanic-American male and currently 31 years of age. At all times relevant to this Complaint Plaintiff was a resident of Nassau County.

15.    That Defendant the SUFFOLK COUNTY (hereinafter referred to as "COUNTY") was and is a duly constituted municipal corporation of the State of New York existing and operating under and by the virtue of the laws of the State of New York.

16.    Defendant   SUFFOLK   COUNTY   POLICE   DEPARTMENT   (hereinafter "POLICE DEPARTMENT") is an agency of SUFFOLK COUNTY.

17.    During all relevant times in this Complaint, Defendant GERALDINE HART (hereinafter "COMMISSIONER HART", "HART" or "COMMISSIONER"), a white female, sued here in her official and individual capacity, was at the time of February 24, 2021 and all relevant times thereafter an employee of the Defendant COUNTY, and at all relevant times, was the Suffolk County Commissioner of Police, was head decision maker for and employed to serve as such by and for the SUFFOLK COUNTY POLICE DEPARTMENT.  Commissioner Hart was a state actor prior to and on February 24, 2021,  and continued to be so thereafter.

18.    That DEFENDANT POLICE OFFICERS, Det. Gregory Marino, in his individual and official capacity, PO Michael Cafarella,  in his individual and official capacity, PO Matthew Cameron , in his individual and official capacity,  PO Jared Gresh , in his individual and official capacity, PO Frank Filiberto , in his individual and official capacity, PO Juan Borbon, in his individual and official capacity,  PO Shaun Sullivan , in his individual and official capacity, PO William Bubeck , in his individual and official capacity,  PO Anthony Legotti , in his individual and official capacity,  -PO Stephen Russ , in his individual and official capacity, PO Salvatore

5

Sillitti, in his individual and official capacity, PO Vincent Bruno , in his individual and official capacity, Sgt. Anthony DeMeo , in his individual and official capacity, PO Joseph Sinacori , in his individual and official capacity, PO Daniel Boylan , in his individual and official capacity, Det. Michael Rottler , in his individual and official capacity, PO Christopher Draskin , in his individual and official capacity, PO Matthew Merced , in his individual and official capacity, and Police Officers "John and Jane Does 1-10," in their individual and official capacities, , (hereinafter referred to as "DEFENDANT POLICE OFFICERS" or "DEFENDANT OFFICERS"), were at all times herein mentioned police officers, employed by the COUNTY and POLICE DEPARTMENT under the direction of COUNTY and POLICE DEPARTMENT, and DEFENDANT OFFICERS were acting in furtherance of the scope of their employment, acting under color of law, to wit under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the COUNTY and POLICE DEPARTMENT.

19.    Upon information and belief, that all times hereinafter mentioned, and at the time of the commencement of this action, the DEFENDANT OFFICERS were, and are, citizens and residents of the State of New York.

20.    That Defendant COUNTY was and is the employer of members of the POLICE DEPARTMENT.

21.    That DEFENDANT OFFICERS were state actors on February 24, 2021 and continued to be so thereafter.

22.    That on February 24, 2021, DEFENDANT OFFICERS were SUFFOLK COUNTY Police Officers, employed by Defendant COUNTY, and acted as agents of Defendant COUNTY.

23.     At all times relevant in this Complaint, and upon information and belief, DEFENDANT OFFICERS engaged in the arrest, beating, processing, investigation, failing to intervene, encouraging wrongful acts, provided false information, agreed to remain silent about false information and reports, served as the complaining witnesses and otherwise participated in covering up the violations of rights committed against Plaintiff in the abuse of the  criminal proceedings and/or served as the source of information to the District Attorney's Office, supplying allegations and claims against Mr.  Cruz which were false.

## FACTUAL BACKGROUND

**PLAINTIFF'S INITIAL CONTACT WITH THE**
**SUFFOLK COUNTY DEFENDANTS:**

24.     The initial incident and contact with Defendants took place on or about February 24th  2021,  at approximately shortly after midnight,  at or around the vicinity of Canal Road and Strathmore Ct. Drive, Brookhaven, New York in the County of Suffolk, State of New York.

25.     On February 24, 2021 Mr. Cruz was attempting to exit the gas station premises when a SUFFOLK COUNTY POLICE DEPARTMENT vehicle driven by Defendant PO Frank Filiberto then approached Plaintiff's vehicle from the right side in his vehicle and veered toward Plaintiff's vehicle and struck it.

26.     On February 24, 2021 the details reveal that Christopher Cruz entered the gas station, and was stopped at a gas pump. Then a Suffolk County Police cruiser pulled into gas station to the left of Cruz's car, and Police cruiser driven by Defendant PO Frank Filiberto enters gas station to the right of Cruz's car. As Cruz begins to leave gas station, Defendant PO Frank Filiberto in cruiser #2 veered to the right and obviously rammed the car Cruz was driving, striking it on the rear right quarter panel.

27.     On February 24, 2021 Defendant PO Frank Filiberto completed and filed a sworn report, statement and allegation that Mr. Cruz "accelerated and rammed into the front of my police vehicle to evade police contact." This statement was an intentional false statement.

28.     Defendant PO Frank Filiberto also asserted: "Additionally when the suspect vehicle struck my police vehicle it jolted me and my vehicle. This caused my neck to snap left to right and I struck my head against the side pillar of my vehicle. Shortly thereafter, I immediately felt a radiating pain in my neck and a throbbing headache." This statement was an intentional false statement.

29.     This intentionally false statement by Defendant PO Frank Filiberto was more than enough probable cause to believe Defendant PO Frank Filiberto deliberately lied in his statement. No criminal charges were filed against Defendant PO Frank Filiberto and very little if any disciplinary action was taken against him by Defendant Suffolk and SCPD.

30.     In making these false statements against Mr. Cruz, Defendant PO Frank Filiberto alleged in a Felony Assault Complaint that Cruz "did intentionally strike" Filiberto's 2017 Ford Explorer SUV while driving a 2015 Jeep Grand Cherokee after midnight on Feb. 24, 2021.

31.     On February 24, 2021, Defendant PO Gregory Marino completed and filed a further false report, statement, and allegation that Mr. Cruz "hit marked SCPD unit 610" on County Road 83. This statement was false.

32.     On February 24, 2021, Defendant PO Jared Gresh, falsely alleged in a supplementary report that Mr. Cruz rammed the police unit in which he was riding. He alleged that Mr. Cruz "driving at a high rate of speed aimed his front bumper of the jeep Cherokee towards the front bumper of marked unit 610 and intentionally rammed unit 610 causing damage to the front end." This statement was false.

8

33.     Defendant PO Jared Gresh's statement was false as he used his vehicle, unit 610, VIN# 1FM5K8AB6LGA95802, to ram the car in which Mr. Cruz was riding and in doing so caused approximately $6,227.49 of damage to unit 610. This report filed by Defendant PO Jared Gresh was intended to blame Mr. Cruz for something he did not do.

34.     On February 24, 2021, another Defendant PO Gregory Marino, making another charge against Mr. Cruz for the incident in the gas station, completed and filed a sworn report, statement and allegation that Mr. Cruz "did strike Suffolk County marked police unit 613, a 2017 Ford Explorer, VIN# 1FM5K8AR2HGE14861 in the front bumper with the stolen Jeep Cherokee".

35.     In making these false statement against Mr. Cruz,  Defendant PO Gregory Marino alleged in a felony Criminal Mischief complaint that his false statement was "based solely upon information and belief, the source(s) being: Frank Filiberto."  This was a false statement about Mr. Cruz by Defendant PO Gregory Marino.

**SUFFOLK COUNTY DEFENDANTS' ARREST AND
VICIOUS BEATING OF MR. CRUZ –NO OFFICERS INTERVENED AND NO
OFFICERS REPORTED THE VIOLATIONS, BEATING AND ABUSES**

36.     Shortly after, Plaintiff stopped his vehicle and Defendant SCPD officers exited their vehicles and smashed the windows of his car. Plaintiff surrendered and placed his hands up and was pulled from the vehicle with his hands raised in the surrendered position and was then beat, punched, and kicked down to the ground by Defendant Police Officers.

37.     As Plaintiff was laying  face down in the snow, after being beat, kicked and physically assaulted and while he was handcuffed from behind, a Defendant SCPD OFFICER, forcibly told Plaintiff that if wanted to be picked up that he had to eat the dirty snow and told Plaintiff to "eat the fucking snow you fucking spic."

9

38.    Defendants then forcibly pulled Plaintiff up to a standing position. Immediately after, a Defendant OFFICER, believed to be Matthew Cameron remained behind Plaintiff and kept his hand on the back of Plaintiff's neck, gripping Plaintiff's neck.

39.    Shortly thereafter, and without provocation or justification, said Defendant OFFICER Matthew Cameron, violently kicked Plaintiff from behind, making impact with the lower part of Plaintiff's right leg. Then another Defendant Officer immediately pushed Plaintiff from behind causing Plaintiff to stumble forward and Plaintiff was then again thrown on the ground face down in the snow and beaten by multiple officers.

40.    The sequence of events,  as captured on body-camera,  provides a clear view of the abuse to which Mr. Cruz was subjected. The body-camera was worn by Defendant PO Anthony Legotti.

41.    As Defendant PO Anthony Legotti arrived on the scene, with his body camera activated, he emerges from his car and begins walking to the place where Mr. Cruz is being detained by officers.

42.    As Defendant PO Anthony Legotti continues to walk he speaks to a man dressed in plain clothes and says "Hey Boss" to the man, now identified upon information and belief as a Sergeant in SCPD and is depicted here as he was on the scene on February 24, 2021.



43.     Once Defendant PO Anthony Legotti made his way around the vehicles which were stopped at this scene and faces the group of Defendant Police Officers then surrounding Mr. Cruz, who is face down on the ground, the following is a description of some of the images and audio that are captured by the body camera:

a.     An officer declares: "You are lucky you didn't get a bullet in your fucking face."

b.     An officer whistles to indicate the presence of the body-camera being worn by Defendant Legotti.

c.     An officer again calls Mr. Cruz a "piece of shit."

d.     An officer says "hey, hey, hey," to indicate the presence of the camera.

e.     An officer slaps Mr. Cruz in the head.

f.     An officer tries to wave off the camera.

g.     Throughout the time following the realization of the camera being present, officers noticeably absent themselves from the area being filmed.

h.     An officer positions himself and raises his foot to kick Mr. Cruz.

i.     The officer kicks Mr. Cruz from behind with the other foot and another officer  then pushes him forward.

j.     An officer tells Mr. Cruz to "shut the fuck up, dude."

k.     Mr. Cruz responds, "Suck my dick, man."

l.     The officers knock Mr. Cruz to the ground and commence a gang assault on him - kicking, punching, kneeing him.

m.     The sounds of the kicks an punches to Mr. Cruz are audible as are the grunts of Mr. Cruz being repeatedly struck.

n.     One of the officers yells, "Stop resisting!" - even though the video clearly shows no resistance from Mr. Cruz.

o.     The officer wearing the body cam turns the camera away from the assault by turning to his right.

11

p.   Another police vehicle is then seen approaching the scene from the right.

q.   One of the other officers asks, "Is that a cage car?" as another police vehicle arrives.

r.   "Yeah, with all the cameras in it, too," responds the officer wearing the body cam.

s.   An officer comes to the officer with the body cam and directs him off.

t.   Defendant PO Anthony Legotti walks away to his car and as he gets in, a clear shot of his face is captured by his body-camera in the reflection of the side window of his car.



44.    Then, more than a half a dozen Defendant SCPD OFFICERS, along with the above mentioned JOHN DOE Defendant  SCPD OFFICERS, began violently and repeatedly beating, punching, kicking, and abusing Plaintiff all over his body, again, without provocation or justification, while Plaintiff was lying face down in the cold snow and handcuffed from behind.

45.    The Defendant Police Officers who joined in did so with intent to cause physical injury, bring false allegations and charges, and cause injury to Mr. Cruz.  Upon information and belief the total number of members of the Suffolk County Police Department that engaged in wrongful action included no fewer than fifteen (15) Defendant Police Officers who were not only present and did not intervene, but struck Mr. Cruz and did cause serious physical injury to the Plaintiff.

46.     Not only did the more than fifteen Defendant Police Officers not intervene, not one of them reported the abuse and brutality visited on Mr. Cruz.  In fact, his abuse would never have been known except for the fact that a squad supervisor conducting a routine review of arrest reports and other items related to the arrest of alleged auto thief Christopher Cruz, 30, watched the body camera footage.  Then and only then was this matter brought to the attention of ranking members of the SCPD and the County.

## SUFFOLK COUNTY DEFENDANTS' FAILURE TO APPROPRIATELY ADDRESS THE ARREST AND BEATING OF PLAINTIFF

47.     After hearing nothing from the SCPD and seeing no disclosure by Suffolk County until the 8:00 press conference,  Plaintiff, through his attorney, wrote to the District Attorney on March 3, 2021.  That letter which was provided to the District Attorney of Suffolk County also was sent to Defendant Commissioner Hart and Suffolk County Executive Bellone demanding, among other things, that the officers involved in the incident face criminal charges, including:

* Perjury First, Second and Third Degrees P.L.§§ 210.15, 10 & 5;
* Making an Apparently Sworn False Statement in the First and Second Degrees P.L. §§ 210.40 & 210.35;
* Making a Punishable False Written Statement P.L.§ 210.45
* Assault in the Third Degree P.L. § 120.00
* Assault in the Second Degree P.L. § 120.05
* Aggravated Harassment in the First Degree P.L. § 240.31
* Gang Assault in the First Degree P.L. § 120.07
* Conspiracy in the Third Degree P.L. § 105.13
* Tampering with Physical Evidence P.L. § 215.40

based the evidence, including the body camera recording of the events when Mr. Cruz was in police custody and handcuffed with his hands behind him.

48.     Although the Defendant Commissioner learned about the video on Thursday, February 25, 2021 nothing was said to disclose this abuse of the public trust to the greater public.

49.    However, when the information was about to be released to the public on March 4, 202, 1 in an attempt to limit the public exposure and avoid accountability, Defendants County called a rushed and unprecedented 8:00 p.m. press conference on March 3, 2021, which was a nearly a week after the brutal beating.  During that time from February 24, 2021 to March 3, 2021 at 8:00 p.m. the County and Defendant Commissioner failed to inform the public, failed to disclose this clear level of abuse and attempt to cover up this incident.

50.    Then at the press event at 8:00 p.m. on March 3, 2021 Commissioner Hart stated, "I know people will be rightfully angry and disappointed and I can tell you that I am too," "This type of behavior cannot and will not be tolerated."  Defendant Commissioner Hart also stated "I expect our officers to act with respect and restraint. If you witness misconduct by a fellow officer, you are obligated to stop it."

51.    Suffolk County Executive Steve Bellone, who held the press event on March 3, 2021 stated "I watched that video earlier today," and "What I saw was disturbing, unacceptable and something that cannot be condoned."

52.    Rather than arrest the Defendant Police Officers who were engaged in the brutal beating, obvious cover up and other unlawful acts against Mr. Cruz, Commissioner Hart, Suffolk County, and the SCPD failed to bring any criminal charges against the Defendant Police Officers.

## SUFFOLK COUNTY DEFENDANTS' UNLAWFUL USE OF EXCESSIVE FORCE, INTIMIDATION, FALSE CRIMINAL CHARGES, DISCRIMINATORY TREATMENT OF PLAINTIFF AND FAILURE TO INTERVENE

53.    At all times, once in police custody,  Plaintiff was abiding by Defendant SCPD OFFICERS' instructions and was not in any way resisting against the OFFICERS.

54.    Plaintiff was falsely arrested and falsely charged with crimes he did not commit. At all times, the Defendant police officers were aware that Plaintiff had not assaulted them, had not resisted arrest, and that those allegations being made against him were false.

55.    The Officers along with other members/officers of the Suffolk County Police Department used unlawful and excessive force against Mr. Cruz, wrote and gave false statements and testimony; provided false police reports, fabricated evidence, malicious prosecution, abuse of process, intimidated Mr. Cruz, discriminated against him on the basis of race, falsely accused Mr. Cruz of crimes which he did not commit, falsely prosecuted Mr. Cruz for false charges, wrote false allegations against him, failed to conduct and engage in sufficient and proper investigations and submitted false investigative reports.

56.    Approximately a dozen Defendant SCPD OFFICERS, dressed in both uniforms and plainclothes, engaged in or observed these attacks on Plaintiff's person. These Defendant SCPD OFFICERS were in close proximity to Plaintiff and to the Defendant SCPD OFFICERS who attacked Plaintiff and observed Defendant SCPD OFFICERS' violent attack on Plaintiff.

57.    However, these bystander Defendant SCPD OFFICERS did not take any action to intervene and/or stop the other Defendant OFFICERS from attacking, abusing and beating Plaintiff.

58.    At various points before and while Defendant OFFICERS attacked Plaintiff, Defendant OFFICERS used vile, race based and threatening language against Plaintiff, without reason, cause, justification, or provocation. Mr. Cruz was subjected to an unprovoked attack by Suffolk County police officers who cursed, slapped, pushed, punched, kicked and otherwise violated Mr. Cruz in a series of vicious attacks while he was handcuffed with his hands behind him. At no time did Mr. Cruz assault any officers, resist any officers or fail to comply with the

15

directions of officers.

59.    A plainclothes Defendant SCPD OFFICER threatened Mr. Cruz's life in stating, "You're lucky you didn't get a bullet in your fucking face, you piece of shit."

60.    The clear racial animus displayed and never disputed by any of the officers was made clear in the disregard for Mr. Cruz as a human being when he was told to  "Eat the fucking snow you fucking spic."

61.    None of the Defendant Police officers made any attempt to intervene on this racist and clearly inappropriate use of racially offensive and torturous actions to which Mr. Cruz was subjected.

62.    Other Defendant SCPD OFFICERS communicated  in code, by whistling and in other manners, to signal to the officers present at the scene that one officer was wearing a body cam, so as to hide the wrongful and violative actions being taken.

63.    Defendants Cameron, Filiberto and Gresh also falsely reported that Plaintiff drove his vehicle into a SUFFOLK COUNTY POLICE DEPARTMENT vehicle.

64.    Police Officers wrote and gave false statements and testimony and  subjected Mr. Cruz to malicious abuse of criminal process, fabricated evidence, filed false documents and perjured themselves. What is clear is that the police lied and provided false information in furtherance of an official investigation into the incident.

65.    DEFENDANT OFFICERS then, without cause or justifiable basis, charged Plaintiff with several crimes including Felony Assault in the Second Degree on a Police officer, Resisting Arrest and Harassment in the Second Degree.

66.    Mr. Cruz was falsely charged and DEFENDANTS continued to falsely, abusively and maliciously prosecute Mr. Cruz on false charges for nearly four months until all charges

except the Grand Larceny charge were dismissed outright and were determinations in his favor.

67.    Prosecutors told Judge Richard Dunne in June of 2021 that they were dropping second-degree assault, third-degree criminal mischief and resisting arrest charges against Cruz, saying that they were "not sustainable charges."  Finally, six months later, on Sept. 29, 2021, Mr. Cruz pled guilty to one count of Petit Larceny and was sentenced to time served.

68.    At all times, DEFENDANT OFFICERS were aware that Plaintiff committed no crimes against Police Officers and that any such charges were false.  Mr. Cruz suffered severe and serious injuries as a direct result of the beating, use of unreasonable force and excessive force by DEFENDANT OFFICERS.

69.    At all times, Defendant police officers were aware that Mr. Cruz had not committed any of the crimes alleged against police officers and that those charges were false and manufactured to cover up the brutal and senseless actions of POLICE OFFICER Defendants and their failure to intervene and prevent those acts. Thereafter, Mr. Cruz was brought to the hospital due to his obvious injuries.  Once at the hospital Defendants Officers sought to intimidate and did coerce Plaintiff into refusing treatment and not disclosing what he had experienced in the form of brutality at the hands of Defendant Officers.

70.    Mr. Cruz sustained multiple injuries including, but not limited to, lacerations and cuts, mental anguish, bleeding, being subjected to summary beatings, racial discrimination, suffering a concussion, being hit in his head, lacerations and cuts, blurred vision, headaches, injury to other parts of his body being manhandled during his unlawful abuse, scarring, loss of blood, physical pain, embarrassment, mental pain and suffering, incarceration, false claims being made against him, medical costs/fees, other damages due to the COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE DEPARTMENT, Det. Gregory Marino, PO Michael Cafarella,

17

PO Matthew Cameron,  PO Jared Gresh, PO Frank Filiberto, PO Juan Borbon, PO Shaun Sullivan, PO William Bubeck, PO Anthony Legotti, PO Stephen Russ, PO Salvatore Sillitti, PO Vincent Bruno, Sgt. Anthony DeMeo, PO Joseph Sinacori, PO Daniel Boylan, Det. Michael Rottler, PO Christopher Draskin, PO Matthew Merced, and Police Officers "John and Jane Does 1-10," 's violation of his various rights, and other monetary damages due to the SUFFOLK COUNTY and SUFFOLK POLICE DEPARTMENT's violation of his various rights.

71.    Plaintiff was forced to answer false charges and at arraignment was further deprived of his freedom and had bail in the amount of $25,003 cash, $50,003 bond and the partially secured bond of $200,003 was set against him.  As a result of the false and wrongful charges Mr. Cruz was detained in the Suffolk  County Correction Center for approximately seven days before he could secure his liberty.

72.    It was not until Sept. 29, 2021 that Plaintiff was free from being obligated to appear in Court to answer those false charges which had been leveled against him by Defendant Police Officers.

73.    DEFENDANT OFFICERS lodged false and malicious charges against Plaintiff, and wrongfully and improperly made false accusations against Plaintiff without probable cause in an attempt to justify and cover up their own wrongful and violative actions. Each of the DEFENDANT OFFICERS have engaged in the willful preparation of false and misleading reports and documents intended to further the prosecution of Plaintiff, and to cause Mr. Cruz further injury and distress following his abusive and violent treatment and beating.

74.    The Defendant Officers Gregory Marino and Frank Filiberto filed Felony Complaints and Defendants Officer Matthew Cameron filed a Misdemeanor Information under oath and falsely alleged that Mr. Cruz rammed police cars, assaulted police officers, resisted

18

arrest and engaged in criminal mischief.   They also falsely alleged that Mr. Cruz was "kicking his legs at Officers, and spitting toward Officers" and "continued to kick, flail and refuse verbal commands and refused to comply with verbal commands in spite [sic] of being handcuffed behind his back."

75.     Each of the three charging documents (two Felony Complaints and one Misdemeanor Information) were dated February 24, 2021 and were sworn documents which subject the person making the statement to the possibility of being charged with making and filing a false statement.  Any such charge would subject a person making that false statement and/or filing same with arrest and is punishable as a class A misdemeanor, pursuant to Section 210.45 of the New York State Penal Law.

76.     Rather than admit their wrongful actions and avoid perjury and making false statements, Defendant Officers colluded and conspired to charge Plaintiff with violating Penal Law §120.05(03) (Felony Assault in the Second Degree conduct); §205.30 (Resisting Arrest); and  Penal Law §145.05(02) (Felony Criminal Mischief Third Degree). The commencement of the criminal proceeding for those charges was an abuse of the use of legal process and intended to mask the clear violations suffered by Mr. Cruz at the hands of the Defendant Officers.

77.     On or about December 2, 2021 the Suffolk Count District Attorney announced that a special grand jury indicted Defendant PO Matthew Cameron for making a false sworn statement when charging Christopher Cruz with resisting arrest back on February 24, 2021. Defendant PO Matthew Cameron, of Commack, is currently charged with Offering a False Instrument for Filing in the Second Degree, a class A misdemeanor.

78.     The Special Grand Jury found reasonable cause to believe that Defendant PO Matthew Cameron filed with the First District Court of Suffolk County, a false sworn statement

19

in support of a criminal complaint charging Mr. Cruz with Resisting Arrest.

79.    Although Plaintiff was made to suffer serious injuries on February 24, 2021, which required intensive and specialized medical treatment, Mr. Cruz pleaded not guilty to all charges and has maintained his innocence to all the charges alleged to have been taken against police officers.

80.    In using vile, race based and threatening language against Plaintiff, Defendant Officers engaged in race based actions which were not only criminal but were also bias crimes against Mr. Cruz all without reason, cause, justification, provocation, or legal authority.

81.    At no time during the attack on Plaintiff by DEFENDANT OFFICERS did Plaintiff resist or provide any form of force or resistance against any of the DEFENDANT POLICE OFFICERS that were attacking him.

82.    On said date, although the Plaintiff had committed no crimes against Police Officers as charged, exhibited no assaultive behavior against anyone, no less Police Officers. DEFENDANT OFFICERS engaged in the aforementioned prohibited conduct all in violation of the Plaintiff's constitutionally protected rights.

83.    DEFENDANT OFFICERS conspired and concocted the trumped up allegations of wrongdoing on the part of Plaintiff, wherein they accused Plaintiff of Resisting Arrest, Criminal Mischief and Felony Assault.

84.    Despite the obvious violations occurring against Mr. Cruz, none of the DEFENDANT OFFICERS intervened to prevent the wrongful beating, abuse and mistreatment of Plaintiff including the filing of false criminal charges against him by Police Officers.

85.    DEFENDANT OFFICERS brutally beat Plaintiff with their hands, feet, knees and fists as well as hurling him down steps, and slamming him against the ground and steps, causing

severe physical and emotional injuries to Plaintiff's person.

86.    Plaintiff, CHRISTOPHER CRUZ, continues to suffer emotionally and physically, often coping with sleeplessness and night terrors, which affect his ability to function as he did before the incident.

87.    Plaintiff, CHRISTOPHER CRUZ, continues to suffer from physical disfigurement, scarring, abnormalities in movement, pain and aching as a result of Defendants', individually and collectively, actions and failures to act.

88.    Mr. Cruz sustained multiple injuries including, but not limited to, being charged with crimes he did not commit, being hit about his head, being knocked unconscious, post concussion syndrome, other injury to his brain, lacerations and cuts, other injuries and being manhandled during his unlawful abuse by Suffolk County Police.  He also suffered scarring, loss of blood, physical pain,  embarrassment, mental anguish and suffering, incarceration, and other damages not yet fully ascertained.

### AS AND FOR A FIRST COUNT
### 42 U.S.C. § 1983
### FALSE ARREST, MALICIOUS PROSECUTION, UNREASONABLE AND EXCESSIVE USE OF FORCE, FABRICATION OF EVIDENCE AND DENIAL OF THE RIGHT TO A FAIR TRIAL

89.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 88 of this Complaint with the same force and effect as though fully set forth herein.

90.    On February 24, 2021, Plaintiff was placed in fear of his life, falsely seized, falsely detained and falsely arrested by DEFENDANTS and subjected to excessive and unreasonable force and unlawful search and seizure.

21

91.     On February 24, 2021, Plaintiff was placed in fear of his life, falsely arrested, falsely seized, detained, and held for an unreasonable period of time against his will without justification, explanation or rationale for such detention.

92.     On February 24, 2021, while being detained, Plaintiff was subjected to excessive and unreasonable force, which was abusive, injurious to his body, damaging to his mental well being and demeaning in nature.

93.     On February 24, 2021, while being detained, DEFENDANT OFFICERS beat Plaintiff about his body and head, and subjected him to loss of consciousness, loss of blood, fear of loss of life, permanent scarring, loss of function, loss of freedom, loss of use of body parts and other serious injuries, which they knew would be a likely outcome of their action and were indeed the outcomes and injuries that DEFENDANT OFFICERS caused.

94.     On February 24, 2021, while being detained, DEFENDANT OFFICERS kicked, punched, and otherwise subjected Plaintiff to excessive and unreasonable uses of force which caused concussion, permanent scarring, loss of blood, physical pain, headaches, neurological deficits, stomach injuries, prolonged pain, hospitalization, loss of consciousness, embarrassment, mental pain and suffering, incarceration, medical costs/fees, and other damages. As a result of the DEFENDANT OFFICERS' actions Plaintiff suffered and continues to suffer.

95.     Upon information and belief such seizure, arrest and detention was ordered and was collectively caused by DEFENDANT COUNTY, DEFENDANT POLICE DEPARTMENT and DEFENDANT OFFICERS.

96.     DEFENDANT OFFICERS from DEFENDANT POLICE DEPARTMENT were present in or around the vicinity of Lent Avenue and Morrell Street and participated in the unlawful detention, arrest, and beating of Plaintiff.

97.    DEFENDANT OFFICERS from the COUNTY and POLICE DEPARTMENT failed to take any action to prevent this unlawful behavior by the DEFENDANT OFFICERS.

98.    Upon information and belief, such seizure, arrest, detention, and assault was ordered, condoned and authorized by the DEFENDANT COUNTY, DEFENDANT POLICE DEPARTMENT and DEFENDANT OFFICERS, with a callous, deliberate indifference to Plaintiff's known constitutional rights.

99.    Upon information and belief, each DEFENDANT OFFICER took an active role in creating and manufacturing the allegations made against Plaintiff due to his race and color, and to cover up the abuses to which he was subjected.

100.    Not a single member of the group of Defendant Police Officers who were present on the scene at the time of the beating and abuse of Plaintiff reported the beating which occurred to a superior, commanding or ranking officer.  Further, none of the Defendant Police Officers who were present made statements identifying any of their fellow officers who participated in the beating and abuse of Plaintiff.

101.    If the abuse and beating had not been captured on video, not one of the Defendant Officers would have reported or admitted that Mr. Cruz was abused, cursed at, kicked, pushed, slapped, beaten, racially demeaned, and violated as he was.

102.    As part of the false arrest, detention, and accusations, DEFENDANT OFFICERS caused plaintiff to be seized, arrested, hospitalized and held in a dangerous, compromising position for an unreasonable time without probable cause, caused him to be deprived of his liberty without due process, and further exposed to disgrace, public humiliation and embarrassment.

23

103.    The DEFENDANT OFFICERS individually and collectively knew at the time of Plaintiff's arrest, and at all times since then, that they were not in possession of any evidence consistent with and sufficient to establish his guilt of the allegations made against him concerning police officers and were based solely, or in part, on DEFENDANTS' discriminatory and violative actions due to his race and color, and intentional act to cover up their abuse, beating and violations of Plaintiff's rights.

104.    Each of the DEFENDANTS, acting under color of law, acted separately and in concert and without authorization of law. Each of the DEFENDANTS, separately and in concert with each other, acted willfully, knowingly and purposefully with the specific intent to deprive Plaintiff of his right to freedom from excessive force, illegal seizure of his person, freedom from illegal detention, and imprisonment, malicious prosecution and fabrication of evidence.  All of these rights are secured to Plaintiff by the provisions of the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States, the Fourth Amendment, the Equal Protection clause of the Fourteenth Amendment, and by 42 U.S.C. § 1983.  In addition Plaintiff was not advised of any of his rights and was denied access to an attorney at the time of his wrongful and abusive punishment and was subjected to summary punishment without providing any of the rights to which he was entitled,  including right to counsel.

105.    Each of the Defendant Police Officers engaged in manufacturing allegations, fabricating evidence, formulating false narratives, and offering incorrect and intentionally false statements in an attempt to create and strengthen the case against Mr. Cruz and to force Plaintiff to be charged and convicted for crimes that he did not commit and that they each knew were false and could not be substantiated.

106.    Each of the Defendant Police Officers who manufactured allegations, fabricated evidence, formulated false narratives, offered incorrect and intentionally false statements and forwarded the false information to prosecutors, did so with the intent, belief and purpose that the false information was likely to influence a jury's decision about the false charges leveled against Mr. Cruz.  Each of the Defendant Police Officers had a duty not to lie or persecute Mr. Cruz, who was innocent of the Assault, Criminal Mischief and Resisting Arrest charges brought by the Defendant Police Officers.

107.    Each of the Defendant Police Officers engaged in manufacturing allegations, fabricating evidence, formulating false narratives, and offering incorrect and intentionally false statements in an attempt to create and strengthen the case against Mr. Cruz and deny him free and fair access to a fair trial. Defendants attempted to use their false statements to prevent Mr. Cruz from having proper and lawful access to the courts and to try to force Plaintiff to plead guilty to, or be found guilty of the false crimes charged, and be convicted for crimes that he did not commit, and that they each knew were false and could not be substantiated.

108.    In falsely arresting, falsely imprisoning, abusing, beating, detaining, coercing, threatening, intimidating and interrogating Plaintiff, and denying Plaintiff his right to be free from unreasonable search and seizure the DEFENDANTS, and each of them, knew or should have known they were violating laws of the State of New York and those statutory and constitutional rights set forth herein causing harm to Plaintiff.

109.    As a direct and proximate result of the aforesaid acts of the DEFENDANTS, Plaintiff suffered great physical harm, mental anguish and violations of rights from then until now and he will continue to so suffer in the future, having been greatly humiliated and mentally injured, as a result of the foregoing acts of the DEFENDANTS.

25

110.    Plaintiff was forced to incur great personal expense, and mental anguish due to his treatment and being forced to vindicate his rights including the filing of this complaint in an attempt to clear his name against the unfounded and unwarranted allegations by the DEFENDANTS, which have been a serious burden on Plaintiff.

111.    That by reason of the foregoing, Plaintiff has been placed in fear of his life, suffers bodily and physical injuries, suffers significant emotional damages, distress, pain, suffering, loss of self-esteem, and self-doubt and has been exposed to disgrace, public humiliation and embarrassment. Plaintiff was deprived of access to his family, and of his constitutional rights and as a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of the sum of Ten Million ($10,000,000.00) Dollars as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

**AND AS FOR A SECOND COUNT**
**42 U.S.C. § 1981**

112.    The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 111 of this Complaint with the same force and effect as though fully set forth herein.

113.    According to an email dated May 9, 2019 from Carolyn Weiss, Senior Trial Attorney of the  Employment Litigation Section Civil Rights Division, the United States Justice Department  "conducts monitoring of the Suffolk County Police Department ("SCPD") pursuant to a Consent Decree that was entered in *U.S. v. Suffolk County* E.D.N.Y. 83-C-2737). Specifically, the consent decree, which is a publicly filed document, covers disparate treatment and disparate impact discrimination against Hispanics by SUFFOLK COUNTY and SUFFOLK

COUNTY POLICE DEPARTMENT. Given the scope of the consent decree, [the Justice Department] reviews the SCPD's practices regularly

114.   That  Consent Decree was approved and entered by the Court on September 12, 1986. In the Consent Decree, while the COUNTY expressly denies that it had discriminated against Hispanics, it acknowledges that certain of practices, treatment and interactions with members of the Hispanic population could support an inference that discrimination had occurred. This Decree and acknowledgment covered policing and all aspects of the SCPD's practices including arrests, use of force, and others.

115.   The Consent Decree expressly prohibits the County (including SCPD)  from engaging in any further discrimination (Decree, ¶ 2), requires monitoring by the United States of the COUNTY's compliance with the Decree (Decree, ¶¶ 32-35), and provides that the Court retain jurisdiction of the United States' action against the COUNTY for the purpose of implementing the relief provided in the Decree, as well as "to effectuate Suffolk County's full and complete compliance with Title VII." (Decree, ¶ 37)

116.   In addition to the 1986 Consent Decree, the SUFFOLK COUNTY POLICE DEPARTMENT has been and continues to be the subject of another Federal Consent Decree which was entered into in the form of an Agreement on or about January of 2014.  The focus of this Agreement was on serious shortcomings identified and confirmed within the SUFFOLK COUNTY POLICE DEPARTMENT in its dealings, interactions and contacts with members of the Hispanic/Latino communities of Suffolk County.

117.   Part of that Agreement was focused on ensuring that "SCPD will maintain implementation of a comprehensive policy prohibiting discrimination, including the denial of services, on the basis of race, color, ethnicity, national origin, religion, or sexual orientation in the SCPD police practices."

118.    The investigation resulted in the Department of Justice making over 100 recommendations for correcting the discriminatory policies and practices of the Suffolk County Police Department, and sending a letter to SCPD to explain how some of those recommendations could help resolve the problems with the Latino community.   These recommendations included, but were not limited, to the following:

a.    Revising vague policies regarding questioning suspects about their immigration status or place of birth to determine whether there is reason to believe that they are undocumented, due to "the possibility that this [practice] may raise fears in the Latino community" ;

b.    Revising the practices and policies of the SCPD Hate Crimes Unit based on reports from the immigrant community that "'immigrant bashing' was abetted by SCPD through inaction" and a review of policies that did not appropriately train officers on the scope of potential hate crimes or hate-based actions that could give rise to future hate crimes ;

c.    Improving the accessibility of complaint forms, incident reports, department policies, and community relations materials for individuals with limited proficiency with the English language, particularly for Spanish speakers and based on reliable translation services (as opposed to Google Translate);

d.    Similarly improving the availability of officers with Spanish language proficiency and familiarity with minority cultural norms, as some members of the community "claimed that officers declined to assist them where language was a barrier to communication" ;

e.    Improving the process for accepting and processing complaints against SCPD officers alleging discriminatory conduct or excessive force (previously the process referred complaints to the Human Rights Commission, which did not actually conduct an independent investigation and thus gave the public a "false impression" regarding the government's response to such complaints) ;

f.    Using SCPD's existing early warning database system to "gather and track data for each officer's arrests by race or ethnicity of the subject" ;

g.    Enhancing SCPD's "community relations and outreach programs, particularly to cultivate relationships with Latino communities in Suffolk County," with the hope that, "[o]ver time, Latino residents may consider SCPD officers as more approachable, thereby bridging the distrust that currently exists" ; and

      h.      Changing the existing practice of using drunk driving roadblocks "primarily to request documentation of citizenship. . . [which] is not an acceptable practice."

119.    In January 2014, Suffolk County entered into a Settlement Agreement with the United States that called for SCPD to "implement new and enhanced policies and procedures to ensure nondiscrimination in the provision of police services to Latino communities in Suffolk County." Since June 2015, the Department of Justice has issued five reports assessing SCPD's compliance with the Settlement Agreement. In a report dated March 13, 2018, the Department of Justice found that SCPD is only partially compliant with many terms of the Agreement, including requirements for bias-free policing, handling allegations of police misconduct, and engaging the Latino community.

120.    Symptomatic of SCPD's enduring problems, former Suffolk County Police Sergeant Scott Greene was arrested in March 2014 and convicted of stealing money from Latino motorists in Suffolk County. Greene pulled over more than two dozen Latino motorists, and instead of issuing tickets, he stole money from them. That law suit is still pending in the Eastern District of News York.

121.    To this day, members of the minority Latino community in Suffolk are not treated fairly or served adequately by the Suffolk County Police Department. The police are often unresponsive, dismissive of community concerns, hostile or discriminatory, and use unreasonable and excessive force, or fail to properly execute basic duties when serving minority residents (such as preparing comprehensive and accurate police reports).

122.    Plaintiff was targeted to be abused, beaten, mistreated by DEFENDANT OFFICERS because of his race, that being of Hispanic-American descent.

123.    Plaintiff was detained, arrested, assaulted and beaten by DEFENDANT OFFICERS on the account of his race.

29

124.    The above referenced conduct was part of a pattern and practice of discrimination, based on race and color, by DEFENDANT COUNTY, COUNTY POLICE DEPARTMENT and DEFENDANT OFFICERS, which violates 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No, 102-406).

125.    DEFENDANTS continued the aforesaid discriminatory and retaliatory treatment of Plaintiff on a continuous, ongoing basis, and DEFENDANTS' above alleged conduct was part of a systemic pattern and practice of discrimination (against Plaintiff as an Hispanic-American male).

126.    As a consequence of DEFENDANTS' wrongful actions, willful neglect, callous indifference, negligent behavior and violation of State and Federal Laws, Plaintiff was deprived of his freedom, was injured, was subjected to unlawful search and seizure, was subjected to mental anguish, and suffered great fear, embarrassment, personal, humiliation, and degradation. All of these rights are secured to Plaintiff by the provisions of the due process clause of the Fifth, and Fourteenth Amendment; the Equal Protection Clause, the Fourth Amendment, and the Sixth Amendment to the United States Constitution as well as the protections afforded under 42 U.S.C. § 1981.

127.    That by reason of the foregoing, Plaintiff has been placed in fear of his life, suffers bodily and physical injuries, suffers significant emotional damages, distress, pain, suffering, loss of self-esteem, and self-doubt and has been exposed to disgrace, public humiliation and embarrassment. Plaintiff was deprived of access to his family, and of his constitutional rights and as a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of the sum of Ten Million ($10,000,000.00) Dollars as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## AS AND FOR A THIRD COUNT
## 42 U.S.C. § 1983 - MUNICIPAL LIABILITY

128.    Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 127 of this Complaint with the same force and effect as though fully set forth herein.

129.    Prior to February 24, 2021 and since, the COUNTY OF SUFFOLK has permitted and tolerated a pattern and practice of unjustified, unreasonable and illegal uses of force, abuse of authority, beatings, and uses of weapons by police officers of the SUFFOLK COUNTY POLICE DEPARTMENT. Although such beatings, abuse of authority, illegal use of force, and use of weapons were improper, the officers involved were not seriously prosecuted, disciplined, or subjected to restraint, and such incidents were in fact covered up with official claims that the beatings, use of force, and uses of weapons were justified and proper. As a result, COUNTY OF SUFFOLK police officers within their jurisdiction were caused and encouraged to believe that civilian persons could be beaten or abused under circumstances not requiring the use of excessive force, and that such abuse and beatings would in fact be permitted by the DEFENDANT COUNTY OF SUFFOLK .

130.    As demonstrated by the existing Consent Decree, as set out above,  there has been a pattern of abuse of authority by the DEFENDANT COUNTY OF SUFFOLK and SCPD in its interactions and dealings with the Hispanic residents of Suffolk County.

131.    In addition to permitting a pattern and practice of improper beatings and abuses in DEFENDANT COUNTY OF SUFFOLK and by DEFENDANT POLICE DEPARTMENT, DEFENDANTS have failed to maintain a proper system of investigation of all incidents of unjustified beatings, abuses of authority, and excessive use of force by police officers.

132.    Despite the disparate levels of policing and discriminatory treatment of the Black and Hispanic persons in Suffolk very little has been implemented to change those disparities and

nothing has been done to make police in Suffolk accountable for their wrongful actions against civilians like Mr. Cruz.

133. According to the annual Compliance Reports mentioned above relating to DEFENDANT COUNTY OF SUFFOLK and DEFENDANT POLICE DEPARTMENT, the numbers show the findings in percentages of IAB (Internal Affairs Bureau) cases for the years of the reports. Note most of the IAB cases lead to no charge and very few substantiated. Many times a determination that a Complaint is unsubstantiated comes from refusal to accept certain witnesses and videos. Defendant Commissioner Hart knew of these facts and at the time of this matter with Mr. Cruz did nothing to prevent this culture of lack of discipline and proper supervision of wrongful and violative acts by police officer from continuing.

| Year | Substantiated | Unsubstantiated | Unfounded | Exonerated | Free of Any Charge |
|------|---------------|-----------------|-----------|------------|--------------------|
| 2020 | 7% | 28% | 19% | 46% | 93% |
| 2019 | 14% | 27% | 16% | 43% | 86% |
| 2018 | 6% | 32% | 19% | 43% | 94% |
| 2017 | 18% | 32% | 9% | 41% | 82% |
| 2016 | 22% | 28% | 0% | 50% | 78% |

134. DEFENDANT COUNTY and DEFENDANT HART have failed to respond to the continuing and urgent need to prevent, restrain, and discipline police officers who wrongfully beat, and abuse civilians, and/or abuse their authority, and/or use excessive force against them, and DEFENDANT COUNTY and DEFENDANT HART have failed to find that civilian complaints made against police officers are founded or valid in anyway. Therefore, DEFENDANT COUNTY and DEFENDANT HART are liable under 42 U.S.C. §1983 because

the DEFENDANT COUNTY and DEFENDANT HART had actual and/or constructive knowledge of the patterns of abuse and excessive force against citizens by its police officers, employees, and/or agents in violation of the United State Constitution, and because of the DEFENDANT COUNTY'S, and DEFENDANT POLICE DEPARTMENT's ineffectual policy and custom for reviewing complaints of misconduct, the DEFENDANT OFFICERS relied upon that flawed policy to continue their patterns of their abusive authority, physical abuse, excessive force, and false arrests, all in violation of the Plaintiff's rights.

135.    DEFENDANTS COUNTY, HART and POLICE DEPARTMENT have maintained a system of review of unjustified seizures, beatings, shootings, and excessive use of force by police officers that has failed to identify the improper abuses of authority, and brutality by police officers,  and has failed to subject officers who abused, beat and/or brutalized citizens to discipline, closer supervision, or restraint, to the extent that it has become the custom of the DEFENDANT COUNTY to tolerate the improper abuses of authority beatings, illegal arrests and other wrongful actions by police officers.

136.    Further, the DEFENDANT COUNTY and DEFENDANT POLICE DEPARTMENT, who maintain either supervisory and/or decision-making positions, permitted a practice of improper investigation, supervision, discipline and retention of Defendant Officers. The DEFENDANT COUNTY, DEFENDANT HART and DEFENDANT POLICE DEPARTMENT also refused and failed to prosecute the DEFENDANT OFFICERS, and thereby improperly and in violation of the Plaintiff's rights neglected, failed, and/or delayed in administering an investigation of the circumstances surrounding the instant matter and neglected, failed, and/or delayed in presenting the matter to the District Attorney of the County of Suffolk for presentation to the Grand Jury.

137.    Upon information and belief, specific systemic flaws in the DEFENDANT COUNTY'S brutality review process include, but are not limited to, the following:

a.    Preparing reports regarding investigations of beatings and abuse incidents as routine point-by-point justifications of police officer actions, regardless of whether such actions are justified;

b.    Police officers investigating beatings systemically fail to credit testimony by non-police officer witnesses, and uncritically rely on reports by police officers involved in the incident;

c.    Police officers investigating beatings fail to include in their reports relevant factual information which would tend to contradict the statements of the police officers involved;

d.    Supervisory police officers at times issue public statements exonerating police officers for excessive use of force, improper beatings, and use of unnecessary and excessive force before the investigation of the incident by the police department has been completed;

e.    Reports in brutality cases are not reviewed for accuracy by supervisory officers.  Conclusions are frequently permitted to be drawn on the basis of clearly incorrect or contradictory information.

138.    The foregoing acts, omissions, systemic flaws, policies and customs of the Defendants COUNTY, HART and POLICE DEPARTMENT caused the DEFENDANT OFFICERS to believe that brutality and other improper actions would not be aggressively, honestly and properly investigated, with the foreseeable result that officers are most likely to use excessive force in situations where such force is neither necessary nor reasonable.

139.    As a consequence of Defendants' wrongful actions, intentional, negligent, and reckless behavior, and violations of state and federal laws, Plaintiff was deprived of his freedom, was made to suffer physical injuries, great pain, and suffering, and was subjected to great fear and terror, personal humiliation, and degradation, and continues to suffer physical pain and mental and emotional distress as a result of the aforesaid unlawful conduct of the Defendants.

140.    That by reason of the foregoing, Plaintiff has been placed in fear of his life, suffers bodily and physical injuries, suffers significant emotional damages, distress, pain, suffering, loss of self-esteem, and self-doubt and has been exposed to disgrace, public humiliation and embarrassment. Plaintiff was deprived of access to his family, and of his constitutional rights and as a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of the sum of Ten Million ($10,000,000.00) Dollars as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## AND AS FOR A FOURTH COUNT
## 42 U.S.C. § 1983 - FAILURE TO INTERVENE

141.    The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 140 of this Complaint with the same force and effect as though fully set forth herein.

142.    DEFENDANT OFFICERS from SUFFOLK COUNTY POLICE DEPARTMENT knew or should have known that the detainment, false arrest, wrongful imprisonment and excessive beating of CHRISTOPHER CRUZ violated the Plaintiff's rights, guaranteed to him under the Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1981 and 1983.

143.    Defendant Commissioner recognized the well established requirement for Defendant Police Officers not to idly stand by while Mr. Cruz was being beaten and abused when she stated, "This type of behavior cannot and will not be tolerated."   Defendant Commissioner Hart also stated "I expect our officers to act with respect and restraint. If you witness misconduct by a fellow officer, you are obligated to stop it."

144.    Each of the said DEFENDANTS had the authority, ability and concurrent duty under 42 U.S.C.§ 1983 to prevent the false arrest, wrongful detainment and excessive beating of

the Plaintiff, yet neglected to prevent said violations from occurring, and further failed to intervene to protect or aid the Plaintiff when such violations did in fact occur.

145.    DEFENDANT OFFICERS from the DEFENDANT POLICE DEPARTMENT failed to stop these wrongful actions, which constitutes a breach of their duty to do so under 42 U.S.C. § 1983.

146.    DEFENDANT OFFICERS from the DEFENDANT POLICE DEPARTMENT knew or should have known that the fabricated accusations against, and physical beating of CHRISTOPHER CRUZ were violative of his Fourth, Fifth and Fourteenth Amendment rights to due process, and were tantamount to unequal protection under the law, in violation of the Plaintiff's fundamental rights under the Constitution.

147.    Said DEFENDANTS had and continue to have the power to prevent the continued due process violations against  CHRISTOPHER CRUZ , yet have failed to prevent or dismiss the pending fabricated charges against the Plaintiff, or to protect the Plaintiff from the unwarranted and potential penalties of said charges.

148.    DEFENDANT COUNTY's exoneration of and refusal to discipline the DEFENDANT OFFICERS for their misconduct against CHRISTOPHER CRUZ is neglectful of their duty to prevent the further violation of CHRISTOPHER CRUZ's right to compensation under 42 U.S.C. §§ 1981 and 1983, with such violation occurring as a result of said officers being improperly cleared of any wrongdoing, despite substantial eye-witness and physical evidence to the contrary.

149.    That by reason of the foregoing, Plaintiff has been placed in fear of his life, suffers bodily and physical injuries, suffers significant emotional damages, distress, pain, suffering, loss of self-esteem, and self-doubt and has been exposed to disgrace, public

humiliation and embarrassment. Plaintiff was deprived of access to his family, and of his constitutional rights and as a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of the sum of Ten Million ($10,000,000.00) Dollars as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

**AND AS FOR A FIFTH COUNT**
**ASSAULT and BATTERY (PENDENT STATE CLAIM)**

150.    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 149 of this Complaint, with the same force and effect as though fully set forth herein.

151.    During all times mentioned herein, the DEFENDANT OFFICERS engaged in the illegal conduct herein mentioned to the injury of Plaintiff CHRISTOPHER CRUZ and deprived Plaintiff CHRISTOPHER CRUZ of the rights, privileges and immunities secured to Plaintiff by the Fourth and Fourteenth Amendment of the Constitution of the United States, the laws of the United States and the laws of the State of New York, as pendant claims.

152.    That on said date DEFENDANT OFFICERS accosted Plaintiff and brutally assaulted him without any justification, provocation or assaultive gestures on Plaintiff's part, and despite the fact that the Plaintiff CHRISTOPHER CRUZ had committed no crime or broken any law, which he was charged with, DEFENDANT OFFICERS detained and arrested Plaintiff with no probable cause.

153.    The DEFENDANT OFFICERS visited unwanted, offensive and harmful physical contact upon the Plaintiff, with the intention of causing harm to Plaintiff.

154.    DEFENDANT OFFICERS did cause physical injuries and harm to Plaintiff by punching and hitting him, kicking him, knocking him to the ground, and otherwise assaulting him with their hands and feet.

155.    The Plaintiff did not in any way provoke or instigate such attacks, and did not create any threat of harm to the DEFENDANT OFFICERS.

156.    Although DEFENDANT OFFICERS acted contrary to the law, they continued their shocking and unjustified conduct by conspiring and contriving with each other on said criminal charges against Plaintiff and they placed Plaintiff in custody.

157.    Upon information and belief, said physical abuse and punishment were ordered by, carried out by, and condoned by DEFENDANT COUNTY its agents and employees, who were acting within the course or scope of their employment.

158.    That as a result of said beatings, kicking, punches and physical and mental abuse, the Plaintiff CHRISTOPHER CRUZ sustained damages and injuries, including but not limited to, personal injuries to his body, violation of civil rights, loss of income, permanent damage to reputation and standing in the community, loss of comfort, support, and companionship, extreme mental and emotional harm and stress, impairment of earning power, and other injuries not yet fully ascertained.

159.    That by reason of the foregoing, Plaintiff has been placed in fear of his life, suffers bodily and physical injuries, suffers significant emotional damages, distress, pain, suffering, loss of self-esteem, and self-doubt and has been exposed to disgrace, public humiliation and embarrassment. Plaintiff was deprived of access to his family, and of his constitutional rights and as a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of the sum of Ten Million ($10,000,000.00)

Dollars as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

**AND AS FOR A SIXTH COUNT**
**FALSE IMPRISONMENT (PENDENT STATE CLAIM)**

160.    The Plaintiff, repeats, reiterates and realleges each and every allegation contained in paragraph 1 through 159 of this Complaint, with the same force and effect as though fully set forth herein.

161.    On or about the 24th day of February, 2021 in the County of Suffolk, DEFENDANT OFFICERS maliciously and deliberately, with force and arms, detained and held down the Plaintiff without any probable or reasonable cause and without legal authority and beat, punched, kneed and otherwise abused him. DEFENDANT OFFICERS thereupon maliciously, and with wanton and reckless disregard for his life, beat Plaintiff while in rear handcuffs without his consent.

162.    Plaintiff was detained in such a manner for an unreasonable period of time.

163.    That DEFENDANTS engaged in the above mentioned actions without probable cause in that they did not honestly, reasonably and in good faith believe Plaintiff to be guilty of any crimes against police officers and had done nothing deserving of being beaten while in custody.

164.    DEFENDANTS acted maliciously in restraining, limited plaintiffs movement, battering, and assaulting, all against his will in that the DEFENDANTS desired to harm Plaintiff.

165.    As a result of the foregoing, Plaintiff has suffered injury to his person and has suffered great mental and bodily distress due to his being abused, restrained and beaten and treatment afterwards, all to his damage.

166.    That by reason of the foregoing, Plaintiff has been placed in fear of his life, suffers bodily and physical injuries, suffers significant emotional damages, distress, pain, suffering, loss of self-esteem, and self-doubt, and has been exposed to disgrace, public humiliation and embarrassment, was deprived of access to his family, and was deprived of his constitutional rights. As a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of the sum of Ten Million ($10,000,000.00) Dollars as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

**AND AS FOR AN SEVENTH COUNT**
**FALSE ARREST (PENDENT STATE CLAIM)**

167.    Plaintiff, repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 166 of this Complaint, with the same force and effect as though fully set forth herein.

168.    On or about the 24th day of February 2021 in the DEFENDANT COUNTY and DEFENDANT OFFICERS intentionally, falsely, unlawfully and wrongfully, with force and without Plaintiff's consent and against his will, assaulted, battered, falsely arrested and falsely imprisoned Plaintiff by detaining Plaintiff and imprisoning him, and depriving him of his liberty for an unreasonable time.

169.    By reason of the above and in particular said false arrest, Plaintiff's reputation has been greatly injured and he has been brought into public scandal and disgrace. Plaintiff has been greatly hindered and prevented from following and transacting his affairs, and business and has suffered great emotional trauma and harm, all to his damage.

170.    That by reason of the foregoing, Plaintiff has been placed in fear of his life, suffers bodily and physical injuries, suffers significant emotional damages, distress, pain,

suffering, loss of self-esteem, and self-doubt and has been exposed to disgrace, public humiliation and embarrassment. Plaintiff was deprived of access to his family, and of his constitutional rights and as a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of the sum of Ten Million ($10,000,000.00) Dollars as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## AND AS FOR A EIGHTH COUNT
## ABUSE OF PROCESS (FEDERAL and PENDENT STATE CLAIM)

171.    Plaintiff, repeats reiterates and realleges each and every allegation contained in paragraphs 1 through 170 of this Complaint, with the same force and effect as though fully set forth herein.

172.    DEFENDANTS used their legal power and authority to commence and continue false criminal charges against Plaintiff in an attempt to gain benefit from doing so. DEFENDANTS  sought and used the criminal process to cover up and seek protection from loss of employment, discipline and possible criminal prosecution by alleging that Plaintiff had engaged in criminal activity when they each knew and were well aware that he had not. Said acts were a violation of Federal Law and State Law in that Plaintiff's Fourth and Fourteenth Amendment Rights were violated as well as common law.

173.    DEFENDANTS' accusations and allegations against Plaintiff were false, malicious, negligent, reckless, intentional and wrongful and were intended to cause Plaintiff injury and to harass Plaintiff and were clearly the improper exercise of the police power, the resources of government, as well as an abuse of process.

174.    That the false arrest, false imprisonment, assault, battery, excessive and unreasonable use of force, illegal transportation, and violation of Plaintiff's civil rights were

brought about and caused by the actions of DEFENDANTS and that the same were a clear and intentional abuse of process causing Plaintiff severe damage.

175.    That by reason of the foregoing, Plaintiff has been placed in fear of his life, suffers bodily and physical injuries, suffers significant emotional damages, distress, pain, suffering, loss of self-esteem, and self-doubt and has been exposed to disgrace, public humiliation and embarrassment. Plaintiff was deprived of access to his family, and of his constitutional rights and as a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of the sum of Ten Million ($10,000,000.00) Dollars as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

**AND AS FOR A NINTH COUNT**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(PENDENT STATE CLAIM)**

176.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 175 of this Complaint with the same force and effect as though fully set forth herein.

177.    The DEFENDANT COUNTY and DEFENDANT OFFICERS acted outrageously for their above-stated roles in the wrongful stop, detainment, false arrest, prolonged captivity, intimidation and public humiliation of the Plaintiff, CHRISTOPHER CRUZ.

178.    Said emotional harm was exacerbated by the fabricated criminal charges against the Plaintiff, known by DEFENDANT COUNTY and DEFENDANT OFFICERS to be without basis.  Yet DEFENDANTS prosecuted Plaintiff for crimes they knew he did not commit with the intention of causing extreme further harm, distress and duress to Plaintiff CHRISTOPHER CRUZ .

179.    The DEFENDANTS knew that their conduct would cause severe and extreme emotional harm to Plaintiff.

180.    That by reason of the foregoing, Plaintiff has been placed in fear of his life, suffers bodily and physical injuries, suffers significant emotional damages, distress, pain, suffering, loss of self-esteem, and self-doubt and has been exposed to disgrace, public humiliation and embarrassment. Plaintiff was deprived of access to his family, and of his constitutional rights and as a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of the sum of Ten Million ($10,000,000.00) Dollars as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## AND AS FOR A TENTH COUNT
## NEGLIGENCE (PENDENT STATE CLAIM)

181.    The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 180 of this Complaint with the same force and effect as though fully set forth herein.

182.    DEFENDANT COUNTY, DEFENDANT HART and DEFENDANT OFFICERS had a duty under 42 U.S.C. §§ 1981 and 1983, as well as under the Fourth, Fifth, Sixth and Fourteenth Amendments, and under New York State Law and their own rules and regulations, to prevent and cease the abusive treatment, beating, wrongful detainment, false arrest, false imprisonment, malicious and false charging and prosecuting of Plaintiff, as well as a duty to investigate, supervise and discipline DEFENDANT OFFICERS and prevent other wrongful acts that were committed against Plaintiff CHRISTOPHER CRUZ .

183.    In actively inflicting harm and failing to prevent the above stated abuses incurred by CHRISTOPHER CRUZ, all of the DEFENDANTS acted unreasonably, recklessly, and negligently in failing to exercise the slightest amount of due care to secure and protect the civil and constitutional rights of the Plaintiff against illegal search and seizure, detained custody and arrest without access to counsel, Miranda warnings, and other due process violations.  Said rights are guaranteed to the Plaintiff by 42 U.S.C. §§ 1981 and 1983, and by the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution.

184.    This breach of duty under each of the statutes, rules and regulations which formed the duty due to Plaintiff by DEFENDANT COUNTY, DEFENDANT HART and DEFENDANT OFFICERS was a direct and proximate cause of the harm suffered by Plaintiff CHRISTOPHER CRUZ .  Said harm includes physical harm, pain and suffering, which continues to this day, monetary expenses in lost wages and legal costs, personal humiliation, damage to reputation and severe physical, emotional and psychological damage, resulting in the need to seek professional counseling for the trauma which he incurred.

185.    That by reason of the foregoing, Plaintiff has been placed in fear of his life, suffers bodily and physical injuries, suffers significant emotional damages, distress, pain, suffering, loss of self-esteem, and self-doubt and has been exposed to disgrace, public humiliation and embarrassment. Plaintiff was deprived of access to his family, and of his constitutional rights and as a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of the sum of Ten Million ($10,000,000.00) Dollars as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

**WHEREFORE,** the Plaintiff demands judgment against the DEFENDANTS:

a)    On the First Cause of Action in excess of the sum of Ten Million ($10,000,000.00) Dollars;

b)    On the Second Cause of Action in excess of the sum of Ten Million ($10,000,000.00) Dollars;

c)    On the Third Cause of Action in excess of the sum of Ten Million ($10,000,000.00) Dollars;

d)    On the Fourth Cause of Action in excess of the sum of Ten Million ($10,000,000.00) Dollars;

e)    On the Fifth Cause of Action in excess of the sum of Ten Million ($10,000,000.00) Dollars;

f)    On the Sixth Cause of Action in excess of the sum of Ten Million ($10,000,000.00) Dollars;

g)    On the Seventh Cause of Action in excess of the sum of Ten Million ($10,000,000.00) Dollars;

h)    On the Eighth Cause of Action in excess of the sum of Ten Million ($10,000,000.00) Dollars;

I)    On the Ninth Cause of Action in excess of the sum of Ten Million ($10,000,000.00) Dollars;

j)    On the Tenth Cause of Action in excess of the sum Ten Million ($10,000,000.00) Dollars;

k)    Punitive damages in the sum of TWENTY MILLION DOLLARS ($20,000,000.00);

l)    Declaratory Judgment that defendants willfully violated Plaintiffs' rights secured by federal and state law as alleged herein;

m)    Injunctive relief, requiring defendants to correct all past violations of federal and state law as alleged herein; to enjoin DEFENDANTS from continuing to violate federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws;

n)    Award such other and further relief as this Court may deem appropriate, including costs and attorney's fees, pursuant to 42 U.S.C. §1988.

**A JURY TRIAL IS HEREBY DEMANDED**.

Dated: Hempstead, New York
　　　February 23, 2021

                              LAW OFFICES OF
                              FREDERICK K. BREWINGTON

                    By:    /s/ *Frederick K. Brewinggton*
                           FREDERICK K. BREWINGTON
                           *Attorneys for Plaintiff*
                           556 Peninsula Boulevard
                           Hempstead, New York 11550
                           (516) 489-6959